# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 21-1047**

**September Term, 2021**

FILED ON: MAY 27, 2022

ATLANTIC BEECHCRAFT SERVICES, INC.,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
RESPONDENT

On Petition for Review of an Order
of the Federal Aviation Administration

Before: SRINIVASAN, *Chief Judge*, WILKINS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

## J U D G M E N T

The Court considered this appeal on the record and on the briefs of the parties. We have accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the petition for review be **DENIED**.

Petitioner Atlantic Beechcraft Services is a certified aircraft maintenance facility at Fort Lauderdale Executive Airport (FXE). Sheltair Executive South, Inc., a tenant of the City of Fort Lauderdale at FXE, subleases to over 191 subtenants, including Atlantic. Another of those subtenants is Banyan Air Services, Inc. Under the terms of Banyan's sublease, Banyan is the exclusive provider of the maintenance and repair of turbine engines within Sheltair's leasehold at FXE.

Atlantic's first sublease with Sheltair was effective as of January 2013. An amendment to the renewed lease dated December 30, 2015, explicitly limited the scope of permissible work to include only piston-aircraft maintenance. The amended lease thus does not permit Atlantic to conduct maintenance on turbine-engine aircraft within Sheltair's leasehold. That function instead is reserved exclusively to Banyan pursuant to Banyan's sublease with Sheltair.

The City of Fort Lauderdale receives federal funds under the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 47101 *et seq.* As a grant recipient, the City must enforce compliance with particular grant assurances. The statute provides in relevant part that "a person providing, or intending to provide, aeronautical services to the public will not be given an exclusive right to use the airport." 49 U.S.C. § 47107(a)(4). Grant Assurance 23, a condition of each airport sponsor's grant agreement, implements that statutory provision by requiring sponsors to "permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public." J.A. 48.

Persons "directly and substantially affected by any alleged noncompliance" with a grant assurance may file a complaint with the Federal Aviation Administration (FAA) under 14 C.F.R. § 16.23. Such a complaint is known as a Part 16 complaint.

In March 2017, Atlantic filed a Part 16 complaint against the City, alleging that the City had violated Grant Assurance 23 by permitting Sheltair to set a lease restriction precluding Atlantic from performing turbine-engine maintenance. The FAA Director of Airport Compliance and Management Analysis dismissed Atlantic's complaint, determining that Atlantic had not shown that the City granted an exclusive right in violation of Grant Assurance 23. On appeal, the Associate Administrator for Airports affirmed the Director's determination. The Associate Administrator observed that the City's evidence "shows Atlantic and others had ample opportunity to service turbine-engine aircraft at the Airport, thereby refuting the proposition that this right was granted in an exclusive manner." J.A. 585. That analysis rested on an understanding that Grant Assurance 23 prohibits exclusive rights for the use of the airport as a whole, not exclusive rights within each individual tenant's (e.g. Sheltair's) leasehold.

Atlantic timely filed a petition for review. We have jurisdiction over the petition under 49 U.S.C § 46110.

We review the FAA's decision for whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see City of Santa Monica v. FAA*, 631 F.3d 550, 554 (D.C. Cir. 2011). Atlantic presents three principal arguments in support of its contention that the FAA acted arbitrarily and capriciously by concluding that the City had not violated Grant Assurance 23. None of Atlantic's three arguments succeeds.

*First*, Atlantic contends that the City violated the exclusivity assurance by permitting Sheltair to grant an exclusive right of turbine-engine maintenance to Banyan. As noted above, however, Grant Assurance 23 bars exclusive rights to use the airport as a whole, not exclusive rights within individual leaseholds like the right Sheltair granted to Banyan to conduct turbine-engine maintenance within Sheltair's leasehold. Atlantic interprets the prohibition on exclusive rights as applying even within a tenant's individual leasehold. But Grant Assurance 23 by its terms prohibits only the granting of an "exclusive right for the use of the airport" as a whole. J.A. 48. The statutory text confirms that understanding: "a person providing, or intending to provide, aeronautical services to the public will not be given an exclusive right to use *the airport*." 49 U.S.C. § 47107(a)(4) (emphasis added).

Atlantic's contrary reading would lead to absurd results. Every individual leasehold would be required to continuously offer potential subtenants space or the opportunity to conduct services.

2

In other words, all leaseholds would have to be open to all comers, at all times. A tenant could not even assign maintenance work to itself within its own leasehold without violating Atlantic's conception of the prohibition on exclusive rights.

The relevant question under a proper understanding of the grant assurance is whether any entity has an exclusive right vis-à-vis the airport as a whole. And no company at FXE has an exclusive right to conduct turbine-engine maintenance at the airport. Rather, at least ten companies other than Banyan at FXE provide turbine-engine maintenance and repair services. Additionally, the record indicates that at least twelve hangars outside of Sheltair's property are suitable for turbine-engine maintenance, meaning that Atlantic could have competed to provide turbine-engine maintenance in any of those other hangars. Atlantic, in short, had the option to provide turbine-engine maintenance outside Sheltair's leasehold.

*Second*, Atlantic argues that the FAA inaccurately claimed Atlantic had rejected opportunities to conduct turbine engine-maintenance at other FXE locations. But record evidence supports the FAA's conclusion. When the Airport Manager asked Atlantic's owner why the company had not considered space outside Sheltair's leasehold, Atlantic's owner responded that he preferred Sheltair's lower rental rates and more desirable hangar locations. Atlantic thus chose not to pursue other opportunities to conduct turbine-engine maintenance at the airport.

*Third*, Atlantic contends that the Director applied the wrong standard of proof when stating that there was "insufficient evidence in the present record that the City has made it *impossible* for Atlantic" to conduct business at the airport. Atlantic Br. 22 (quoting J.A. 527–28). Atlantic's argument takes the Director's statement out of context. The Director made that observation to distinguish the facts of this case from those in *City of Pompano Beach v. FAA*, 774 F.2d 1529, 1544 (11th Cir. 1985)—a case cited by Atlantic—in which the court explained that an airport sponsor had made it "virtually impossible" for an operator to start a business at the airport. While the Director sought to show that this case falls outside of that description, the Director did not ultimately require Atlantic to show that it was impossible to conduct its business at the airport. The Director instead emphasized that (i) Atlantic itself had stated that the cost of other facilities was too high and it preferred to continue to sublease from Sheltair, and (ii) there were other locations at the airport available for lease and other companies at the airport that provided turbine maintenance services.

Pursuant to D.C. Circuit Rule 36(d), this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Michael C. McGrail
Deputy Clerk